**GENERAL DYNAMICS CORP.**

v.

**The UNITED STATES.**

No. 277–75.

United States Court of Claims.

June 15, 1977.

As Amended Sept. 9, 1977.

Henry W. de Kosmian, New York City, attorney of record, for plaintiff; Steven B. Lapidus and Cravath, Swaine & Moore, New York City, of counsel.

Kenneth R. Boiarsky, Washington, D. C., with whom was Acting Asst. Atty. Gen., Myron C. Baum, Washington, D. C., for defendant; Theodore D. Peyser, Jr., Washington, D. C., of counsel.

Before NICHOLS, KUNZIG and BENNETT, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge:

This suit, for the recovery of interest paid on alleged deficiencies in plaintiff's (General Dynamics) 1958 and 1959 federal income tax, presents a novel and knotty issue. Stated in full, the question is whether deficiencies properly subjected to interest charges[1] arose in plaintiff's 1958 and 1959 federal income tax returns when, in 1961, plaintiff changed from claiming a foreign tax credit[2] to claiming foreign taxes paid as a deduction[3] from its taxable income for 1958 and 1959 in order to obtain maximum benefit of a net operating loss carryback[4]

1. Deficiencies were assessed and collected pursuant to § 6601, which provides in relevant part:

> "SEC. 6601. *Interest on underpayment, nonpayment, or extensions of time for payment, of tax.*
>
> "(a) *General rule.*—If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the rate of 6 percent per annum shall be paid for the period from such last date to the date paid. ". . . .
>
> "(e) *Income tax reduced by carryback.*—If the amount of any tax imposed by subtitle A is reduced by reason of a carryback of a net operating loss, such reduction in tax shall not affect the computation of interest under this section for the period ending with the last day of the taxable year in which the net operating loss arises. . . ." Effective July 1, 1975, § 6601(e) has been renumbered § 6601(d)(1) by § 7(b), Act of January 3, 1975, Pub.L. 93–625, 88 Stat. 2108, 2115. All references are to the Internal Revenue Code of 1954, as in effect through December 31, 1961, except where noted.

2. Pursuant to § 901, which reads in part:

> "SEC. 901. *Taxes of foreign countries and of possessions of United States.*
>
> "(a) *Allowance of credit.*—If the taxpayer chooses to have the benefits of this subpart, the tax imposed by this chapter shall, subject to the applicable limitations of section 904, be credited with the amounts provided in the applicable paragraph of subsection (b) plus, in the case of a corporation, the taxes deemed to have been paid under section 902. Such choice for any taxable year may be made or changed at any time before the expiration of the period prescribed for making a claim for credit or refund of the tax imposed by this chapter for such taxable year . ..
>
> "(b) *Amount allowed.*—Subject to the applicable limitation of section 904, the following amounts shall be allowed as the credit under subsection (a):
>
> (1) *Citizens and domestic corporations.* —In the case of a citizen of the United States and of a domestic corporation, the amounts of any income, war profits, and excess profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; . . ."

3. Pursuant to § 164, which provides in part:

> "SEC. 164. *Taxes.*
>
> "(a) *General rule.*—Except as otherwise provided in this section, there shall be allowed as a deduction taxes paid or accrued within the taxable year.
>
> "(b) *Deduction denied in case of certain taxes.*—No deduction shall be allowed for the following taxes:
>
> ". . . .
>
> "(6) Income, war profits, and excess profits taxes imposed by the authority of any foreign country or possession of the United States, if the taxpayer chooses to take to any extent the benefits of section 901 (relating to the foreign tax credit)."

Section 164 was amended in 1964. The relevant language is now incorporated into § 275(a)(4). *See* note 11, *infra*.

4. Pursuant to § 172, which states in pertinent part:

> "SEC. 172. *Net operating loss deduction.*
>
> "(a) *Deduction allowed.*—There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year. For purposes of this subtitle, the term "net operating loss deduction" means the deduction allowed by this subsection.
>
> "(b) *Net operating loss carrybacks and carryovers.*—
>
> "(1) *Years to which loss may be carried.*—
>
> "(A)(i) Except as provided in clause (ii), a net operating loss for any taxable year ending after December 31, 1957, shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss.
>
> "(B) . . . a net operating loss for any taxable year ending after December 31, 1955, shall be a net operating loss carryover to each of the 5 taxable years following the taxable year of such loss."

arising in 1961. In essence, however, the issue becomes whether plaintiff's "1961 choice"[5] to change from crediting to deducting foreign taxes paid by it *relates back* to the filing dates of plaintiff's 1958 and 1959 federal tax returns.

Plaintiff's 1961 choice, if it relates back, gives rise to deficiencies in plaintiff's 1958 and 1959 returns on which the Internal Revenue Service (IRS or Service) properly assessed interest from the due dates of those returns to December 1961 pursuant to Internal Revenue Code of 1954, § 6601(e). Plaintiff, however, claims that the 1961 change does not relate back because it was "caused by" a net operating loss occurring in 1961. Defendant argues that the 1961 choice does relate back and that the impact of the 1961 loss carryback is irrelevant to the assessment of interest on plaintiff's 1958 and 1959 tax liabilities.

Upon consideration of the parties' cross-motions for summary judgment and the stipulated facts, and having heard oral argument, we hold for defendant.

On General Dynamics' 1958 and 1959 federal income tax returns, it claimed foreign taxes paid as a credit against its federal tax liability. IRC § 901. Subsequently, a net operating loss carryback from 1961 eliminated all plaintiff's federal tax liability for 1958 and 1959, without regard to credits for foreign taxes paid by plaintiff. Because of the limitations imposed by IRC § 904(d),[6] plaintiff was not able to carry unused foreign tax credits from 1958 and 1959 to other taxable years. After 1961 and during the audit for 1958 and 1959, plaintiff therefore timely chose to claim the foreign taxes paid by it as deductions under § 164,[7] rather than as credits.

The effect of General Dynamics' choice to deduct rather than credit was to reduce the portions of the 1961 loss carryback absorbed by plaintiff's taxable income for 1958 and 1959, and thus to increase the amount of the loss available to be carried to other taxable years.

If General Dynamics had originally claimed the foreign taxes paid as deductions rather than credits, the effect would have been to increase plaintiff's federal tax liability (before taking into account the 1961 loss carryback) by the amounts of $1,161,820.03 for 1958 and $1,795,903.61 for 1959. After audit by the IRS, interest was assessed and paid by taxpayer upon these

---

**5.** The choice was actually made after 1961, but as the event which "caused" the choice (the net operating loss) occurred in 1961, we will, for ease of analysis, speak of the choice as made in 1961.

We note that the parties' factual stipulation generically refers to an "election" which was later "revoked." Plaintiff seeks to attach some legal importance, which defendant refutes, to the use of "election." We attribute no legal significance to the use of election (plaintiff's word) as against choice (defendant's). We use the two interchangeably.

**6.** Section 904(d):

"*Carryback and carryover of excess tax paid.*—Any amount by which any such tax paid or accrued to any foreign country or possession of the United States for any taxable year beginning after December 31, 1957, for which the taxpayer chooses to have the benefits of this subpart exceeds the applicable limitation under subsection (a) shall be deemed tax paid or accrued to such foreign country or possession of the United States in the second preceding taxable year, in the first preceding taxable year, and in the first, second, third, fourth or fifth succeeding taxa-

ble years, in that order and to the extent not deemed tax paid or accrued in a prior taxable year, in the amount by which the applicable limitation under subsection (a) for such preceding or succeeding taxable year exceeds the sum of the tax paid or accrued to such foreign country or possession for such preceding or succeeding taxable year and the amount of the tax for any taxable year earlier than the current taxable year which shall be deemed to have been paid or accrued in such preceding or subsequent taxable year (whether or not the taxpayer chooses to have the benefits of this subpart with respect to such earlier taxable year). Such amount deemed paid or accrued in any year may be availed of only as a tax credit and not as a deduction and only if the taxpayer for such year chooses to have the benefits of this subpart as to taxes paid or accrued for that year to foreign countries or possessions. For purposes of this subsection, the terms 'second preceding taxable year' and 'first preceding taxable year' do not include any taxable year beginning before January 1, 1958."

**7.** *See* note 3, *supra*.

amounts,[8] from the due dates of the 1958 and 1959 returns to December 31, 1961, the date when the loss carryback arose. For 1958, interest assessed (and paid) was $207,-383.62; for 1959, the amount was $431,-349.13.

The IRS does not assert a right to the deficiencies *per se* in plaintiff's 1958 and 1959 federal tax liability found when the foreign taxes paid were taken as deductions. The deficiencies were properly and completely eliminated by the application of the 1961 loss carryback to plaintiff's 1958 and 1959 tax liability. At issue is whether interest was properly assessed. Plaintiff, after paying the interest assessments, filed for a refund with the IRS. The Service denied plaintiff's claim for refund; General Dynamics then timely brought this suit.

Plaintiff claims that since there were no deficiencies in its 1958 and 1959 federal tax returns *prior* to the existence of the 1961 net operating loss carryback, it should not have to pay interest on deficiencies arising *after* the 1961 carryback because the deficiencies were both caused and eliminated by the carryback. In short, plaintiff says because it never owed the deficiencies, it should not have to pay interest.

To support this position, plaintiff argues that § 6601, the interest provision, is merely a codification of *Manning v. Seeley Tube & Box Co.*, 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950). *Seeley*, contends plaintiff, allows the collection of interest only on deficiencies that arise *before* a subsequent loss carryback comes into existence, and controls the instant case. In addition, plaintiff points to two revenue rulings and case law of this court as authority for its theory that the 1961 choice does not relate back to the filing dates of its 1958 and 1959 tax returns.

Defendant, in opposition, argues that General Dynamics' 1961 choice relates back

and, therefore, that interest was properly collected. The IRS takes the position that only plaintiff's final choice (to deduct foreign taxes) is determinative of tax liability. To hold otherwise, urges defendant, allows plaintiff to shield money owed the Government behind a combination of the foreign tax credit and loss carryback provisions. For support of its position, the Government also looks to *Seeley, supra,* and to the language and history of the applicable code sections.

■ We hold for defendant. The statutes prohibit the type of "double coverage" plaintiff seeks. Under relevant code sections and the theory of *Seeley,* plaintiff's 1961 decision relates back to the filing dates of its 1958 and 1959 returns. Plaintiff properly owes the interest in question in this case.

Plaintiff begins with an analysis of *Manning v. Seeley Tube & Box Co., supra.*[9] *Seeley,* claims plaintiff, sanctions the collection of interest only on deficiencies present in a taxpayer's return *before* the existence of a loss carryback that eliminates the deficiencies. Since § 6601 is a codification of *Seeley,* plaintiff continues, interest was improperly assessed in the instant case because the deficiencies arose *after* the loss carryback came into existence.

In *Seeley,* taxpayer filed a return claiming a deduction to which it was not entitled and, therefore, understated its tax liability. After the deficiency in tax for the original year had been assessed and collected (together with interest), a net operating loss arose. The loss, carried back to the year of the defective return, eliminated taxpayer's liability regardless of the improperly claimed deduction. Under the 1939 Code, taxpayer took the position that as a consequence of the carryback, there was no deficiency in tax for the year of the defective

---

8. Interest was also assessed and collected on other deficiencies found upon calculation of plaintiff's 1958 and 1959 federal tax liability, taking the foreign taxes as credits. Taxpayer does not dispute its liability for such interest and these other deficiencies play no part in this suit.

9. Plaintiff also cites *Seeley's* progeny, *e. g., Hastings & Co., Inc. v. Smith,* 224 F.2d 875 (3rd Cir. 1955); *Rodgers v. United States,* 123 Ct.Cl. 779, 108 F.Supp. 727 (1952). But as they add nothing substantial to the theory of *Seeley* as applied to this case, we focus only on the Supreme Court's decision in *Seeley.*

return; there was nothing on which interest could be assessed.

The Supreme Court, however, decided for the Government:

> . . . As of a certain date the taxpayer has a duty to file a return for the previous fiscal year and pay the amount of the tax actually due for that year. . . . (footnote omitted)

> . . . From the date the original return was to be filed until the date the deficiency was actually assessed, the taxpayer had a positive obligation to the United States: a duty to pay its tax. See *Rodgers v. United States,* 332 U.S. 371, 374, 68 S.Ct. 5, 7, 92 L.Ed. 3 (1947); *United States v. Childs,* 266 U.S. 304, 309–10 [45 S.Ct. 110, 111, 69 L.Ed. 299] (1924); *Billings v. United States,* 232 U.S. 261, 285–87, 34 S.Ct. 421, 425–426, 58 L.Ed. 596 (1914). For that period the taxpayer, by its failure to pay the taxes owed, had the use of funds which rightfully should have been in the possession of the United States. The fact that the statute permits the taxpayer subsequently to avoid the payment of that debt in no way indicates that the taxpayer is to derive the benefits of the funds for the intervening period. In the absence of a clear legislative expression to the contrary, the question of who properly should possess the right of use of the money owed the Government for the period it is owed must be answered in favor of the Government.

*Manning v. Seeley Tube & Box Co., supra,* 338 U.S. at 565–66, 70 S.Ct. at 388.

According to plaintiff's interpretation, *Seeley* allows the assessment of interest on deficiencies only when the original return filed by the taxpayer is defective. For only then, plaintiff takes *Seeley* to mean, does the taxpayer have the use of money properly belonging to the Government. In the instant case, to follow plaintiff's line of reasoning, *Seeley* does not apply because the taxpayer's original return was not defective. As it was not defective, plaintiff never had use of money belonging to the

defendant and should not be assessed interest charges.

The "watershed" fact for plaintiff then, is that in *Seeley,* the taxpayer's original return was defective, while in the case at bar, plaintiff's return was correct. Because the original return was correct, plaintiff argues its subsequent change in election does not relate back to the filing dates of its 1958 and 1959 returns.

■ Plaintiff, to a point, is correct. *Seeley* does stand for the proposition that a taxpayer cannot avoid interest charges on deficiencies existing in a defective return by the application of a subsequent net operating loss carryback. However, in our opinion, *Seeley* also stands for the general proposition, codified in § 6601(e), that for interest purposes, the tax for a year is computed without consideration to a net operating loss carried back to that year. As the Supreme Court stated in *Seeley:*

> . . . As of a certain date the taxpayer has a duty to file a return for the previous fiscal year and pay the amount of the tax actually due for that year.

*Seeley, supra,* 338 U.S. at 565, 70 S.Ct. at 388.

■ Applied to the instant case, we interpret the Supreme Court's language as meaning that the filing dates of plaintiff's 1958 and 1959 returns are determinative of plaintiff's tax liability for those years. The subsequent change in plaintiff's returns relates back to these dates. Following plaintiff's change from claiming the foreign tax credit to claiming a deduction for foreign taxes paid, plaintiff's tax liability should be calculated as if the foreign tax credit had never been invoked.

We find additional support for this position in the relevant code sections. First, we examine the foreign tax credit and deduction sections. The statutory and legislative history of § 901 (foreign tax credit) make it clear that plaintiff is entitled to the benefits of either the foreign tax credit or the deduction, but not both.[10] In addition,

---

10. I.R.C. of 1939, § 131(e) amended by § 158(a) of Revenue Act of 1942, c. 619, 56 Stat. 798,

856. I.R.C. of 1954, § 901(a) as amended by § 3(b) of Act of Sept. 14, 1960, 74 Stat. 1010,

§ 164(b)(6) [11] is to the same effect. Section 164(b)(6) allows the deduction of foreign taxes paid only if the taxpayer does not, "to any extent," choose the benefits of the foreign tax credit, § 901.

In this case, plaintiff had the benefit of the foreign tax credit for three years. From the 1958 and 1959 filing dates, plaintiff had the use of money that, had plaintiff originally claimed the foreign taxes as deductions, properly belonged to the Government. The benefit derived from this use may be valued by the amount of interest the IRS assessed plaintiff—the subject of this suit.

After plaintiff elected to amend its return to reflect the use of the foreign tax deduction, it gained the benefit of the deduction in addition to the benefit it had already received through the application of the foreign tax credit. Deducting the foreign taxes paid allowed plaintiff to reduce its taxable income for 1958 and 1959. This reduction also resulted in a concomitant reduction in the amount of the 1961 net operating loss needed to eliminate plaintiff's taxable income for those two years. More of the 1961 loss was then available to be carried to other years (pursuant to § 172) to reduce plaintiff's taxes.

In order to prevent this double benefit, disallowed by §§ 901 and 164(b)(6), we must eliminate the benefits plaintiff received from its three-year use of the foreign tax credit. For, as was discussed *supra*, § 164(b)(6) allows the deduction of foreign taxes only if the taxpayer does not, "to any extent" choose the benefits of the foreign tax credit. In this case, eliminating plaintiff's benefits under the foreign tax credit is achieved by having plaintiff's 1961 choice to deduct the foreign taxes relate back to the filing dates of the 1958 and 1959 returns. It is only by giving *retroactive effect* to plaintiff's ultimate decision to deduct (rather than credit) the foreign taxes that we can abide by the Congressional directive set forth in § 164(b)(6).[12]

To hold otherwise would allow a taxpayer, hypothetically, the free use of money properly owed the Government. It would, in effect, grant a taxpayer license to "relate back" in order to obtain special benefits for itself, and yet deny the Government the logical corollary also to "relate back" with respect to tax consequences. It would allow a taxpayer, in a sense, to work a species of the age-old "shell game" on the Government. In year one, a taxpayer could "cover" money by means of the foreign tax credit. Then, in year three, taxpayer could replace the foreign tax credit with the loss carryback. And, finally, operating underneath the "shell" of the loss carryback, taxpayer could change from credit to deduction of foreign taxes, thereby extending the application of the loss carryback to other years, while retaining three years' free use of the money hidden beneath the foreign tax credit shell.

This would violate the Supreme Court's *Seeley* decision by giving plaintiff the use of money "which rightfully should have been in the possession of the United States," *Seeley, supra*, 338 U.S. at 566. It would also violate §§ 901 and 164 of the Internal Revenue Code by improperly allowing plaintiff the benefit both of the foreign tax credit and the foreign tax deduction.

Second, we look to the Code section under which interest was assessed in this case, § 6601. This section also refutes plaintiff's reading of *Seeley* and supports our position. The general rule of § 6601 is that interest

1013. *Also* 1942–2 Cum.Bull. 504, 602–03 (with regard to 1942 amendment) and 1960–2 Cum.Bull. 865, 869, 872–74, 880, 884–85 (with regard to 1960 amendment).

11. Section 164(b)(6) was amended by the Revenue Act of 1964, 78 Stat. 19. Section 275(a)(4) now incorporates the language previously found in § 164(b)(6).

12. Even if there were some doubt in the statutory directive, we would still be bound by the language of *Seeley* to reach this result:

"In the absence of a clear legislative expression to the contrary, the question of who properly should possess the right of use of the money owed the Government for the period it is owed must be answered in favor of the Government."

*Seeley, supra*, 338 U.S. at 566, 70 S.Ct. at 389.

runs from the "last date prescribed for payment." IRC § 6601(a). Subsection (c) of § 6601 provides that "the last date prescribed for payment of the tax" is determined under chapter 62. Section 6151 of chapter 62 points out that the last date for payment is the "time and place fixed for filing the return." *See also* IRC § 6072.

In plaintiff's case, the "last date[s] prescribed for payment" were the filing dates of its 1958 and 1959 returns—"the time . . . .' fixed for filing the return[s]" as specified by § 6151. It is from these two dates, then, that plaintiff's tax liability is calculated. Because of this, we are again led to the conclusion that plaintiff's 1961 change altering its 1958 and 1959 returns must relate back to the filing dates of the returns for 1958 and 1959. To read § 6601 *et al.* differently would do violence to the plain meaning of those sections. *Bergen v. United States*, Ct.Cl. No. 356–74 (April 20, 1977) Slip Op., n.3; *Selman v. United States*, 204 Ct.Cl. 675, 680, 498 F.2d 1354, 1356 (1974).

The final Code provision appropriate for examination is § 6211, which defines "deficiency." As one might expect, the statutory language provides, generally, that a deficiency is the amount by which the tax imposed by the applicable subtitle exceeds the amount shown as the tax by the taxpayer upon his return. IRC § 6211(a). However, the regulations speak more specifically to the problem now before the court. Reg. § 301.6211–1(a) (1962) defines deficiency as including:

> Additional tax shown on an "amended return," so-called, filed after the due date of the return . . .

■ Applying this language to the instant case, we think that plaintiff's 1961 choice created deficiencies in its 1958 and 1959 returns. First, plaintiff filed a document which *amended* its returns. This amendment caused additional taxes to show on those returns. Such additional taxes are deficiencies in plaintiff's 1958 and 1959 returns within the meaning of the Code and Regulation § 301.6211–1(a) (1962). Therefore, in order to make plaintiff's returns

properly reflect these deficiencies, plaintiff's 1961 choice must relate back to the filing dates of its 1958 and 1959 returns.

Section 6211, then, like §§ 901, 164, and 6601, supports the court's position—that plaintiff's 1961 choice relates back to the filing dates of plaintiff's 1958 and 1959 returns. Plaintiff's total tax liability (including interest) must, as a result, be calculated as if the foreign tax credit had never been invoked.

■ Plaintiff, in addition to its *Seeley*-based argument, also claims that there is "clear authority for the proposition that § 6601(e) does not apply to a deficiency created by a carryback." Plaintiff's authority consists of two Revenue Rulings, neither of which is controlling in this case. The first, Rev.Rule. 66–317, 1966–2 C.B. 510, involved the elimination of a taxpayer's use of the investment credit (IRC § 38) by a subsequent loss carryback. The Service ruled that § 6601(e) did not apply to the portion of the 1963 tax originally offset by the investment credit. Taxpayer was not required to pay interest for the period running from the due date of the return to the end of the loss year on that portion of its tax liability eliminated by the loss carryback deduction because that portion of its tax liability was properly offset by the investment credit.

Contrary to plaintiff's statement, Revenue Ruling 66–317 did not involve a "deficiency created by a carryback." No deficiency ever existed. Taxpayer, prior to the application of the loss carryback, had properly claimed the investment credit. Following the application of the carryback, the investment credit was no longer available.

On this ground alone, we could deny the application of Revenue Ruling 66–317; it simply does not stand for the proposition for which plaintiff needs support. But there is an additional reason why it does not apply.

If the instant case concerned only the issue of whether plaintiff should pay interest on the amount of tax liability originally offset by the application of the foreign tax

credit, then the ruling might apply. For in that situation, plaintiff, like the taxpayer in Rev.Rul. 66–317, never owed taxes to the Government. But in the instant case, plaintiff, because its 1961 choice relates back, is not claiming the foreign tax credit; it is seeking to deduct foreign taxes from its taxable income. When the foreign taxes are taken as deductions, deficiencies exist in plaintiff's 1958 and 1959 returns. For these deficiencies plaintiff owes interest, and because of the deficiencies, Rev.Rul. 66–317 does not apply.

Plaintiff's second Revenue Ruling, Rev. Rul. 71–534, 1971–2 C.B. 414, is also inapplicable. In that Ruling, taxpayer chose (and did not change that choice) to credit foreign taxes paid for 1966. In 1969, a net operating loss occurred, and the loss was carried back to 1966, eliminating all taxable income and tax liability for that year. Taxpayer then filed a refund claim for 1964, carrying back the unused portion of the foreign tax credits from 1966. The question was whether interest on the overpayment for 1964 began to run from the end of 1966, or from the end of 1969. Resolution of the issue involved an interpretation of two apparently conflicting subsections of § 6611.[13] The Ruling (pro-Government) held that overpayment interest ran from the end of 1969.

Thus plaintiff now says that when the Government has to pay interest the *latest* date is used, but when the taxpayer may owe interest, the Government conveniently shifts its position to the *earlier* date.

However, the situation in the instant case is governed by a different Code section—§ 6601(e)—which states that a net operating loss carryback that reduces the amount of tax owed by a taxpayer shall "not affect the computation of interest." To put the matter simply, Revenue Ruling 71–534 involved a Code section which specifically allows a loss carryback to affect the computation of interest while the case at bar involves a section which specifically does not. For this reason, Revenue Ruling 71–534 does not apply to the case at bar.

As a final defense against relating back, plaintiff argues that the law of this court, as embodied in *E.I. DuPont DeNemours & Co. v. United States*, 137 Ct.Cl. 191, 147 F.Supp. 486 (1957), prevents the retroactive application of its 1961 choice. Again plaintiff's reliance is misplaced. *DuPont* involved the construction of the excess profits tax provisions of the Code which specifically allowed for a deferral of payment. Unlike *DuPont*, this case does not involve a statute which allows a taxpayer to defer its tax liability or to postpone its obligations to pay its tax until a final decision as to the method of tax treatment is made. Neither § 901(a) nor § 6601(e) even hints that a taxpayer can defer its tax obligations by changing from crediting to deducting foreign taxes. In fact, as discussed *supra*, these sections and § 164(b)(6) lead the court to the conclusion that plaintiff's tax liability is to be calculated as of the filing dates of its 1958 and 1959 1958 and 1959 returns, based only on plaintiff's *final* decision to deduct the foreign taxes and not based on plaintiff's interim, intermediate steps en route.

In summary, plaintiff's reliance on *Seeley* and Revenue Rulings 66–137 and 71–534 is misplaced. The fact that the deficiencies

---

**13.** The two subsections were SEC. 6611(f)(1):

"(f) *Refund of income tax caused by carryback or adjustment for certain unused deductions.*—

"(1) *Net operating loss or capital loss carryback.*—For purposes of subsection (a), if any overpayment of tax imposed by subtitle A results from a carryback of a net operating loss or net capital loss, such overpayment shall be deemed not to have been made prior to the close of the taxable year in which such net operating loss or net capital loss arises."

and SEC. 6611(g):

"(g) *Refund of income tax caused by carryback of foreign taxes.*—For purposes of subsection (a), if any overpayment of tax results from a carryback of tax paid or accrued to foreign countries or possessions of the United States, such overpayment shall be deemed not to have been paid or accrued prior to the close of the taxable year under this subtitle in which such taxes were in fact paid or accrued."

were supposedly "caused by" the 1961 net operating loss does not prevent plaintiff's 1961 choice to deduct foreign taxes from relating back to the filing dates of plaintiff's 1958 and 1959 federal income tax returns. In fact, *Seeley*, the foreign tax credit and deduction sections and the interest provisions of the Code require that plaintiff's 1961 choice relate back.

Accordingly, upon consideration of the parties' cross-motions for summary judgment and the stipulated facts, and having heard oral argument, we hold for defendant. The Government's motion for summary judgment is granted, plaintiff's motion is denied, and the petition is dismissed.