ESTATE OF LILY ANNE P. MITCHELL, DECEASED, EMMETT MITCHELL, III, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Mitchell v. Commissioner
Docket No. 26373-90
United States Tax Court
T.C. Memo 1993-110; 1993 Tax Ct. Memo LEXIS 126; 65 T.C.M. (CCH) 2157; March 25, 1993, Filed Decision will be entered under Rule 155. *126 For petitioner: William E. Frantz, John B. Grattan, Donald B. DeLoach, For respondent: Eric B. Jorgensen. CLAPP
CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined a deficiency in petitioner's income tax for the year ending November 30, 1987, in the amount of $ 143,979. Respondent also determined additions to tax under section 6653(a)(1)(A) in the amount of $ 7,198.95, and section 6653(a)(1)(B) in the amount of 50 percent of the interest due on $ 143,979. All section references are to the Internal Revenue Code as in effect for the year in issue. The issues for decision are: (1) Whether there was fraud, malfeasance, or misrepresentation by petitioner such that two closing agreements should be set aside. We hold there was not. (2) Whether the closing agreements were void because there was not meeting of the minds between the parties. We hold they were not. (3) Whether the terms of the closing agreements should be interpreted according to their statutory definitions. We hold that they should. FINDINGS OF FACT The stipulation of facts and exhibits attached thereto are incorporated by reference. Petitioner is the estate of Lily Anne P. Mitchell *127 (decedent). Decedent died on December 17, 1980. Emmett Mitchell, III, the executor of decedent's estate, was a resident of Thomasville, Georgia, on the date the petition was filed. On March 14, 1985, respondent issued a notice of deficiency regarding petitioner's estate tax return, and on February 27, 1987, respondent issued notices of deficiency for petitioner's gift tax for the quarter ending September 30, 1976, and for petitioner's fiduciary income tax return for the year ending November 30, 1981. Petitioner challenged those deficiencies in this Court in other docketed cases. As part of the agreement settling the cases, the parties determined that a closing agreement would be necessary for petitioner's tax year ending November 30, 1987. The closing agreement was intended to settle the issue of the income tax due as a result of the distribution of installment notes from decedent's estate. In November 1987, respondent's counsel sent an initial draft of the closing agreement to petitioner's counsel. Upon receipt of the draft closing agreement, petitioner's counsel concluded that some of the language of the draft closing agreement did not accurately reflect the dispute between *128 the parties, and returned the draft to respondent's counsel with suggested changes. Respondent's counsel agreed to the changes and sent a revised closing agreement in December 1987, which was signed by petitioner's representative on December 28, 1987, and by respondent's representative on February 19, 1988. Petitioner's counsel was concerned that the closing agreement might not settle, for all purposes and for all years, the tax liabilities resulting from the installment sales because the closing agreement and the decision documents were limited to specific years. Therefore, the parties entered into a supplemental closing agreement which provided that respondent would not claim or assess, for any tax period, any additional taxes arising out of the installment sale if petitioner fulfilled the terms of the original closing agreement. The supplemental closing agreement contained the same language as the original closing agreement, stating that for its tax year ending November 30, 1987, petitioner had taxable income which included net capital gain of $ 394,380. On petitioner's fiduciary income tax return for the tax year ending November 30, 1987, $ 394,380 was reported as net capital *129 gain pursuant to the closing agreement. That amount was reduced by the section 691(c) deduction and the capital gain deduction. On audit, respondent determined that the parties had already reduced the capital gain on the installment notes by the section 691(c) deduction and the capital gain deduction in arriving at the $ 394,380 amount. Therefore, respondent concluded that $ 394,380 should not have been reduced further on the fiduciary income tax return and disallowed the deductions. OPINION Fraud, Malfeasance or Misrepresentation
Under section 7121, respondent may enter into a written closing agreement with a taxpayer in order to settle a disputed tax liability. Section 7121(b) describes the effect of such agreement: (b) FINALITY. -- If such agreement is approved by the Secretary (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact -- (1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and (2) in any suit, action, *130 or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.
To show either fraud or misrepresentation, respondent must provide evidence of a statement or representation of material fact that is false or incorrect and that petitioner knew the statement was false or incorrect. Moreover, to prove fraud, respondent must show that petitioner intended to deceive respondent. To prove misrepresentation, respondent must show justified reliance on the false or incorrect statement. Bennett v. Commissioner, T.C. Memo. 1988-557. Respondent contends that the false statements in this case occurred in a telephone conversation and in a letter in which petitioner's counsel discussed the changes to the draft of the original closing agreement and stated that they were minor. According to respondent, those discussions misled respondent's representative into believing that the parties were agreeing to a closing agreement that accurately reflected the settlement agreement, when in fact petitioner believed that the language *131 of the closing agreement would "enable it to argue that the closing agreement required less tax to be paid by petitioner than the original settlement of July 9, 1987." Respondent has not presented sufficient evidence to prove fraud or misrepresentation. The statements respondent cites as false statements of material fact are characterized more accurately as statements of opinion. Moreover, even if the statements were considered statements of fact, respondent merely asserts that petitioner's counsel suggested the changes in order to deceive respondent; respondent has presented no evidence of any intent to deceive. Finally, we conclude that respondent was not justified in relying on the statements made by petitioner's counsel. Respondent had ample opportunity, and even a duty, to make an independent evaluation of the changes to ensure that the closing agreements accurately reflected the settlement between the parties. If the revised closing agreement did not accurately reflect the settlement, respondent should not have agreed to the changes. We hold that petitioner did not defraud or mislead respondent and, therefore, the closing agreements should not be set aside. Meeting *132 of the Minds
Respondent also argues that the closing agreements are void because there was no meeting of the minds when the agreements were signed, citing Sergy v. Commissioner, T.C. Memo. 1990-442, to support that proposition. In Sergy, the taxpayers agreed to accept a settlement based on a settlement reached in test cases dealing with the same issue and signed a closing agreement that incorporated that settlement. However, respondent determined that there were some individual problems with the case which required modifications to the settlement and sent a revised closing agreement to the taxpayers without ever signing the original closing agreement. The taxpayers sought to enforce the settlement agreement as it was set out in the original closing agreement. The Court held: In this case, however, we do not believe that there was a complete meeting of the minds as to all details of the settlement. In each case in which a settlement was enforced by the Court, there was some document that reflected all of the specific terms of the settlement. However, in all the documents filed with the Court in this matter, there has been no clear agreement *133 as to all of the terms of the settlement. * * * [Id.]
Sergy does not control because here both parties have signed written closing agreements setting out all the terms of the agreements. The closing agreements are complete as to all essential terms and, by signing the agreements, both parties have agreed to accept those terms. The fact that respondent was mistaken as to the effect of one of the terms used in the agreements does not change the fact that respondent agreed to that term. We hold that there was a meeting of the minds as to the essential terms of the closing agreements; accordingly, the closing agreements are not void. Interpretation of the Agreement
Finally, respondent asserts that the parties intended the term "net capital gain" to mean the net long-term capital gain reduced by the deduction for estate tax attributable to income in respect of a decedent under section 691(c) and by the 60-percent capital gain deduction under section 1202, and, therefore, we should interpret that term as the parties intended. The policy behind the statute authorizing closing agreements has been fully discussed by the courts. See, e.g., Commissioner v. Ingram, 87 F.2d 915 (3rd Cir. 1937); *134 Wolverine Petroleum Corp. v. Commissioner, 75 F.2d 593 (8th Cir. 1935); Brinkman v. Commissioner, T.C. Memo. 1989-217; Bennett v. Commissioner, supra.The Eighth Circuit, in Wolverine Petroleum, explained: The purpose of the statute authorizing closing agreements is to enable the taxpayer and the government finally and completely to settle all controversies in respect of the tax liability for any previous taxable period, and to protect the taxpayer against the reopening of the matter at a later date, and to prevent the filing of additional claims for refund or the institution of suit for the same purpose by the taxpayer. * * * [Wolverine Petroleum Corp. v. Commissioner, supra at 595.]
To allow respondent or the taxpayer to reopen an agreement under the guise of "interpretation" would jeopardize the finality Congress intended to provide. Moreover, we have held that only the written agreement between the parties is controlling. Any oral agreements between the parties that are not expressed in the written agreement are not binding. Bennett v. Commissioner, supra. *135 We find that the parties did not agree that the term "net capital gain" would have a meaning other than its statutory meaning. Petitioner's counsel testified that they believed the term "net capital gain", as used in the closing agreement, was used in accordance with the statutory definition of the term, and we find that testimony to be credible. Respondent points to negotiation calculations as evidence that the parties intended the term to have a different meaning. One of the memoranda prepared by petitioner's counsel for purposes of negotiating settlement did contain calculations that used the term "net capital gain" in a manner consistent with respondent's interpretation of that term. However, the parties never discussed the use of the term, and there is no evidence that the parties agreed to use the term in that manner for the purposes of the settlement agreement. Respondent's counsel in the settlement negotiations testified that she believed that the agreements, as written, reflected the settlement agreement and that the parties intended the term "net capital gain" to have a meaning other than its statutory meaning. The facts do not support that belief. We have no doubt *136 that respondent's counsel truly believed that the closing agreements, as written, accurately reflected her understanding of the settlement agreement reached by the parties. However, she was mistaken, and a unilateral mistake is not grounds for setting aside or altering a closing agreement. Commissioner v. Ingram, supra; Wolverine Petroleum Corp. v. Commissioner, supra; Brinkman v. Commissioner, supra.
We find no indication that the parties agreed to make some special definition of the term "net capital gain" part of the closing agreements. Therefore, we hold that "net capital gain" should be interpreted according to its statutory definition, and petitioner was entitled to reduce the amount stated as net capital gain by the section 691(c) deduction and the capital gain deduction. Decision will be entered under Rule 155.