T.C. Memo. 2016-42

UNITED STATES TAX COURT

ESTATE OF ANTHONY LA SALA, DECEASED, KENNETH LA SALA,
EXECUTOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20773-13L.                    Filed March 8, 2016.

Richard Joseph Sapinski, for petitioner.

Robert W. Mopsick, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, Judge: In this collection due process (CDP) case we are asked to

review, pursuant to sections 6320(c) and 6330(d)(1),[1] the determination by the In-

---

[1]All statutory references are to the Internal Revenue Code in effect at all
relevant times. We round all monetary amounts to the nearest dollar.

[*2] ternal Revenue Service (IRS or respondent) to uphold a notice of Federal tax lien (NFTL) filing. The lien relates to unpaid interest on a Federal gift tax liability for the taxable year 2003. The Estate of Anthony La Sala, through executor Kenneth La Sala, agreed that it was liable for this gift tax when it settled an earlier Tax Court case, Estate of La Sala v. Commissioner, T.C. Dkt. No. 12409-08 (stipulated decision entered October 27, 2010). The estate contends that, under the terms of that settlement, no interest was payable on the 2003 gift tax liability. We disagree and uphold respondent's determination.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated by this reference.

In August 2001 Anthony La Sala (Anthony), then age 93, formed ALS Family LLC (ALSF). In exchange for a 100% ownership interest, Anthony contributed to ALSF cash, marketable securities, and fractional equity shares in two other companies: a 25% share in La Sala Holding Co. and a 10% share in M.H. Partners (fractional equity shares). On January 1, 2003, Anthony, then age 95, sold to his daughter and his two grandchildren, in exchange for an annuity, a 99% interest in ALSF. Anthony retained a 1% interest.

**[*3]**   In exchange for his 99% interest, Anthony was to receive an annuity of $913,986 per year to be paid for the rest of his life.  For purposes of effecting this transaction, Anthony valued the transferred 99% interest at $2,781,900 and his remaining 1% interest at $28,100.  In determining these values he applied discounts of 50% and 35%, respectively, to the values of the fractional equity shares held by ALSF.

Anthony died on January 9, 2004, having received one annuity payment, which was made by his daughter and his grandchildren with funds distributed to them by ALSF.  Kenneth La Sala, as executor of Anthony's estate, timely filed Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return.  The Form 706 reported Anthony's 1% interest in ALSF as an asset of the estate with a value of $28,100.  The Form 706 reported the sale of his 99% interest on Schedule I, Annuities.  The estate took the position that Anthony's life expectancy exceeded one year on January 1, 2003; if that were so, the private annuity transaction would be respected and the value of the 99% interest in ALSF would be excluded from the gross estate.  See sec. 1.7520-3(b)(3), Income Tax Regs.

The IRS selected the estate's return for examination and determined a deficiency in Federal estate tax of $1,999,045.  The IRS concluded that the estate had used excessive discounts in valuing the fractional equity shares held by ALSF and

**[\*4]** that the date-of-death value of its assets was $4,368,534. The IRS further determined that, under section 2036, the full value of ALSF's assets was includible in the gross estate as opposed to the 1% interest the estate had reported.

The estate timely petitioned this Court for review of the estate tax deficiency, <u>Estate of La Sala v. Commissioner</u>, Docket No. 12409-08, and that case was calendared for trial in December 2009. Robert J. Alter served as counsel to the estate, and Joseph Boylan represented respondent. Before trial the parties reached a basis of settlement. The IRS conceded that Anthony, as of January 1, 2003, was reasonably expected to survive for at least one year. The estate conceded that the fair market values of the fractional equity shares held by ALSF were understated by the claiming of excessive discounts. And the parties agreed that, to the extent the value of the transferred 99% interest exceeded the consideration paid therefor-- i.e., the value of the annuity--the excess constituted under section 2503 a taxable gift to Anthony's daughter and grandchildren for the taxable year 2003.

Mr. Boylan attended the calendar call and lodged with the Court a stipulation of settled issues. Although this stipulation recited that the parties had resolved all issues in the case, it did not state all terms of the settlement explicitly. While reciting the parties' agreement that the values of the fractional equity shares held by ALSF "were understated by claiming excessive discounts of 35% * * *

**[\*5]** and 50%," the stipulation did not specify what discounts were appropriate. And while reciting the parties' agreement that "the amount by which the determined value of those two assets exceeds the consideration paid constitutes a taxable gift pursuant to I.R.C. § 2503," the stipulation did not specify the amount of that taxable gift. Noting these omissions, the Court gave the parties 60 days to file decision documents.

Before entry of decision, Mr. Boylan left respondent's employ. Robert Mopsick replaced him as IRS counsel in the case at docket No. 12409-08. Because the terms of the stipulation did not explicitly resolve all relevant issues, Mr. Mopsick initially questioned whether a settlement had actually been reached. On June 4, 2010, the estate filed a motion for entry of decision seeking to enforce the settlement. Representing that the parties had agreed to apply a 25% discount in valuing the fractional equity shares held by ALSF, the estate urged the Court to enter a decision "that there is a deficiency in Estate Tax due from the petitioner in the amount of $177,418 and Gift Tax in the amount of $234,976." The proposed decision document stipulated that, "effective upon the entry of the decision by the Court, petitioner waives the restriction contained in I.R.C. §6213(a) prohibiting assessment and collection of the deficiency (plus statutory interest)."

**[\*6]** On June 24, 2010, Mr. Mopsick notified Mr. Alter of respondent's concession that a settlement had indeed been reached, and the estate thereupon withdrew its motion for entry of decision. The parties then began to exchange documents and calculations to compute the estate tax deficiency and gift tax liability to which the settlement gave rise. Employing a 25% discount for valuing the fractional equity shares, the parties calculated a gift tax liability for taxable year 2003 of $235,207. Although interest on that gift tax liability would have been a deductible expense in computing the estate tax, neither the estate's nor respondent's calculations took account of any interest on the gift tax.

In September 2010 Mr. Mopsick requested that the estate execute and file a Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return, reporting the agreed gift tax liability. In October 2010 the estate executed and sent to the IRS a Form 709 reporting a taxable gift for 2003 of $1,025,343 and a gift tax liability of $235,207. This gift tax return included the following notation: "The filing of this return is conditioned on the concurrent filing of a Decision with the U.S. Tax Court in Estate of Anthony La Sala, Docket No. 12409-08, reflecting an estate tax settlement reached by the Estate and the Internal Revenue Service."

The parties' attorneys executed a decision document showing a recalculated estate tax deficiency of $160,176. This deficiency reflected the treatment of the

**[*7]** 2003 gift as a prior taxable gift and the allowance of deductions for additional attorney's fees. This Court on October 27, 2010, entered a stipulated decision accordingly. (This decision did not mention the 2003 gift tax liability because the notice of deficiency in the case at docket No. 12409-08 determined a deficiency in estate tax only.) On November 15, 2010, the estate sent the IRS a check for $230,838, representing the estate tax due plus interest of $70,662, thus discharging the estate tax liability in full.

On November 18, 2010, the estate sent the IRS a check for $235,207, representing the 2003 gift tax liability but without interest. On January 3, 2011, the IRS processed the Form 709 and assessed the gift tax as reported plus penalties for late filing and late payment. That same day the IRS Cincinnati Service Center sent the estate a Notice CP161, Request for Payment--Federal Gift Tax, showing an unpaid balance due of $484,683. This comprised gift tax of $235,207, a late filing penalty of $52,922, a late payment penalty of $58,802, and statutory interest (including interest on penalties) of $137,752.

On February 1, 2011, counsel for the estate sent a letter to the IRS Cincinnati Service Center, noting that the gift tax liability had already been paid and objecting to the imposition of interest and penalties. That letter apparently

[*8] elicited no response. On January 17, 2012, the IRS sent the estate by certified mail a Notice of Federal Tax Lien Filing and Your Right to a Hearing.

The estate timely requested a CDP hearing and, on June 22, 2012, a settlement officer (SO) from the IRS Appeals Office conducted a telephone hearing with counsel for the estate. The estate pointed out that the gift tax liability had already been paid; contended that no penalties were justified because the gift tax was paid pursuant to a settlement; and argued that no interest was due because the gift tax was allegedly a mere "notational amount" used in calculating the estate tax deficiency. The estate did not request a collection alternative.

The SO verified that the gift tax for 2003 had been properly assessed and that the provisions of applicable law and administrative procedure had been followed. She ensured that the estate's gift tax payment was correctly posted to its account as of November 18, 2010. She abated in full the late filing and late payment penalties, as well as all interest attributable to the penalties. However, she determined that the estate was liable for statutory interest on the 2003 gift tax liability and found no justification for abating that interest. On August 6, 2013, the IRS issued the estate a notice of determination sustaining the NFTL. Kenneth La Sala, as executor of the estate then residing in New York, timely petitioned for review of that determination.

**[*9]**                                    OPINION

I.      Standard of Review

Section 6330(d)(1) provides a person with the right to obtain Tax Court review of an IRS administrative determination in a CDP case. Where the amount of the taxpayer's underlying tax liability is properly at issue, we review the IRS' determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Section 6330(c)(2)(B) permits a taxpayer to challenge the existence or amount of his underlying liability only if he did not receive a notice of deficiency or otherwise have a prior opportunity to contest it. We review the IRS' determinations regarding nonliability issues for abuse of discretion. Hoyle v. Commissioner, 131 T.C. 197, 200 (2008); Goza, 114 T.C. at 182.

The estate has not had a prior opportunity to contest its liability for interest on the 2003 gift tax, and the estate properly raised during the CDP hearing the question whether interest was properly imposed. We will examine de novo the estate's liability for interest and review the SO's other determinations for abuse of discretion. See Urbano v. Commissioner, 122 T.C. 384, 390-391 (2004). Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

[*10] II.     The Estate's Liability for Interest

Section 2001(a) imposes a tax on the transfer of the taxable estate of a decedent who is a U.S. citizen or resident.  The estate tax is computed by first determining a tentative tax on the sum of the taxable estate and adjusted taxable gifts and then by reducing that tentative tax by the amount of gift tax that would have been payable on those gifts, using the rates in effect at the decedent's death.  Sec. 2001(b).  The term "adjusted taxable gifts" means the total amount of taxable gifts (within the meaning of section 2503) made by the decedent after December 31, 1976, other than gifts that are includible in the gross estate.  See sec. 2001(b)(2).

Section 2501(a) imposes a tax on the transfer of property by gift during the year.  Interest accrues on a Federal gift tax liability at the rate specified by section 6621 from the last date prescribed for payment until the date on which the tax is actually paid.  Sec. 6601(a).  Unless a statutory exception applies, the courts lack discretion to excuse a taxpayer from payment of interest.  See Johnson v. United States, 602 F.2d 734, 738 (6th Cir. 1979).  "Congress intended the United States to have the use of the money lawfully due when it became due."  Manning v. Seeley Tube & Box Co., 338 U.S. 561, 566 (1950).  If a tax is not paid by the date prescribed therefor, interest is assessed to compensate the Government for loss of the

[*11] time value of money, irrespective of the reason for the late payment. See Suffness v. United States, 974 F.2d 608, 610 (5th Cir. 1993).

A stipulation of settlement is a contract by which each party grants to the other a concession of some rights as consideration for the rights secured. Saigh v. Commissioner, 26 T.C. 171, 177 (1956). As a contract, a settlement is subject to judicial interpretation as to its meaning in the light of the language used and the circumstances surrounding its execution. Dorchester Indus. Inc. v. Commissioner, 108 T.C. 320, 330 (1997), aff'd, 208 F.3d 205 (3d Cir. 2000). In the absence of a mutual mistake, an affirmative misrepresentation by one of the parties, or other similar circumstances, this Court will enforce the settlement the parties reached. See Stamm Int'l Corp. v. Commissioner, 90 T.C. 315, 322-325 (1988); McMullen v. Commissioner, T.C. Memo. 2015-219, at *7-*9.

The estate asks us to interpret the stipulation of settlement to include, as an implied term, that no interest would be due on the 2003 gift tax liability. The estate advances two contentions to support that conclusion. Neither is persuasive.

First, the estate argues that it did not have, under the settlement agreement, an actual delinquent gift tax liability for 2003. Rather, it says that the $235,207 figure was a mere "notational amount" that was used in calculating the estate tax deficiency and generating an overall settlement of the estate tax case. The estate

**[*12]** asserts that it filed the Form 709, not to acknowledge an actual gift tax liability, but simply to create, at Mr. Mopsick's request, an account entry to which the $235,207 payment could be posted. In support of the latter argument, the estate cites its notation on the Form 709 that "[t]he filing of this return is conditioned on the concurrent filing of a Decision with the U.S. Tax Court * * * reflecting [the] estate tax settlement."

We are not convinced. Through negotiations with IRS counsel the estate secured a settlement ensuring that the private annuity transaction would be respected. In exchange for that concession, the estate conceded that it had undervalued the fractional equity shares held by ALSF and that "the amount by which the determined value of those two assets exceeds the consideration paid constitutes a taxable gift pursuant to I.R.C. § 2503." It is true that the 2003 gift, as a prior taxable gift, generated an input in calculating the estate tax. But it also established an independent gift tax liability for the taxable year 2003; if that is not what the estate intended, it should not have signed a stipulation conceding that Anthony had made, on January 1, 2003, "a taxable gift pursuant to I.R.C. § 2503." See Applestein v. Commissioner, T.C. Memo. 1989-42, 56 T.C.M. (CCH) 1169, 1170-1171.

The estate voluntarily filed a Form 709 reporting a gift tax liability for 2003. That this return was filed at the request of respondent's counsel did not make it

**[\*13]** any less voluntary; the filing of this return was a necessary step in securing a settlement that the estate desired to secure. The appended notation that the filing of the gift tax return was conditioned on entry of a decision in the estate tax case did not render the Form 709 a "non-return." That notation simply indicated, correctly, that the estate's reporting of a 2003 gift tax liability had as a quid pro quo the concessions the IRS made in the estate tax case.

The estate's explicit concession that Anthony made a taxable gift in 2003 established a gift tax liability for that year. That concession was binding even though no gift tax liability was determined in the notice of deficiency commencing the estate tax case. The estate owes interest on this gift tax liability, just as it would owe interest on any other tax liability not paid at the prescribed time. Sec. 6601; see Gen. Dynamics Corp. v. United States, 562 F.2d 1201 (Ct. Cl. 1977).

Assuming arguendo that there was a delinquent gift tax liability for 2003, the estate contends that the stipulation of settlement included an agreement that this liability would not bear interest. This contention is equally unpersuasive. There is nothing in the stipulation of settlement or the parties' subsequent correspondence addressing interest on the gift tax liability, much less evidencing a mutual understanding that no interest would be due.

**[\*14]** Mr. Boylan at trial credibly testified to his belief that he lacked authority to waive interest and that he could never have gotten approval for a settlement that purported to waive interest. See Internal Revenue Manual pt. 35.8.2.5.1 (Aug. 11, 2004) ("The Service does not settle Tax Court cases by waiving statutory interest."). Mr. Alter, an experienced attorney on the other side of the negotiations, testified that he was unaware of any other instance in which the IRS had waived statutory interest as part of a settlement. Under these circumstances, we cannot construe the stipulation of settlement to include as an implied term a waiver of interest on the 2003 gift tax liability. See Smith v. Commissioner, T.C. Memo. 2009-33, 97 T.C.M. (CCH) 1134, 1137 ("In a tax deficiency suit, deficiency interest is not at issue, and a settlement of the suit that makes no mention of interest should not be construed to somehow settle the issue of interest sub silentio.").[2]

---

[2]We have no occasion to decide whether the IRS would have the authority to waive statutory interest in settling a Tax Court case. See Smith, 97 T.C.M. (CCH) at 1137 & n.11 ("It is even theoretically possible, though it would be unusual, for the IRS to enter into a settlement in which it waives interest * * * ." (citing Anthony v. United States, 987 F.2d 670, 674 (10th Cir. 1993))). Our holding is based on our finding that the parties to this settlement neither reached nor expressed a mutual agreement that interest would be waived on the gift tax liability.

[*15] The attorneys who represented the estate during 2009-2010 testified that their internal calculations concerning the cost of the settlement left no room for payment of interest on the gift tax liability. The evidence concerning their subjective understanding was ambiguous; for example, the motion for entry of decision they filed in June 2010 asked this Court to find "a deficiency in * * * Gift Tax in the amount of $234,976" and proposed to the waive restrictions on "assessment and collection of the deficiency (plus statutory interest)." In any event, one party's unilateral misunderstanding or misapprehension of the cost of a settlement does not justify reforming the settlement or setting it aside. See McMullen, at *7-*9; Revell v. Commissioner, T.C. Memo. 2007-37, 93 T.C.M (CCH) 913, 914; Estate of Mitchell v. Commissioner, T.C. Memo. 1993-110, 65 T.C.M. (CCH) 2157, 2159.

The estate contends that upholding its liability for interest on the 2003 gift tax would be inequitable because it is now prevented by the statute of limitations from claiming a deduction for that interest against the estate tax. Although we have some sympathy for the estate's position, the responsibility for claiming deductions lies with the taxpayer. The estate's failure to claim a timely deduction for interest does not justify setting aside the statutory interest to which the Government is entitled. See Carlson v. United States (In re Carlson), 126 F.3d 915, 920

**[*16]** (7th Cir. 1997) (noting that a court may not use its equitable powers to circumvent the statute's mandatory imposition of interest).

III.    Nonliability Issues

Having determined that statutory interest accrued as a matter of law on the 2003 gift tax liability, we now address whether the SO abused her discretion in sustaining the NFTL.  We accordingly consider whether she:  (1) properly verified that the requirements of applicable law and administrative procedure had been met; (2) considered any relevant issues the estate raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [the estate] that any collection action be no more intrusive than necessary."  See sec. 6330(c)(3).

Our review of the record establishes that the SO conducted a thorough review of the estate's account, determined that the gift tax liability was properly assessed, and verified that other requirements of applicable law and administrative procedure were followed.  In particular, the SO ensured that the estate's gift tax payment was properly credited to its account as of November 18, 2010; correctly abated the penalties for late filing and late payment; and correctly abated all interest associated with the penalties.  The SO did not abuse her discretion in declining to abate interest on the gift tax liability because there was no error or

**[\*17]** delay attributable to "erroneous or dilatory" performance of a ministerial or managerial act by an officer or employee of the IRS.  See sec. 6404(e)(1).  Since the estate did not request a collection alternative, the SO properly sustained the NFTL as a means of collecting the unpaid interest on the 2003 gift tax liability.

To reflect the foregoing,

Decision will be entered for respondent.