109 T.C. No. 1


UNITED STATES TAX COURT


BANKAMERICA CORPORATION, as successor in interest to CONTINENTAL
BANK CORPORATION, as successor in interest to CONTINENTAL
ILLINOIS CORPORATION, Petitioner $\underline{v}$. COMMISSIONER OF INTERNAL
REVENUE, Respondent[%]


Docket No. 5931-83.                    Filed July 15, 1997.


P had deficiencies in its Federal income tax for
years 1 and 2. In year 3, P carried back an amount of
investment tax credit to years 1 and 2, reducing the

_____

[%] This Court has issued five opinions under this docket
number, each captioned Continental Illinois Corp. v.
Commissioner: T.C. Memo. 1988-318, T.C. Memo. 1989-468, T.C.
Memo. 1989-636, 94 T.C. 165 (1990), and T.C. Memo. 1991-66,
relating to the tax liability of petitioner's predecessor for the
tax years 1975 through 1979. Portions of the decisions in T.C.
Memo. 1988-318, T.C. Memo. 1989-636, and T.C. Memo. 1991-66 were
affirmed in part and reversed in part and remanded to this Court
in Continental Illinois Corp. v. Commissioner, 998 F.2d 513 (7th
Cir. 1993), cert. denied 510 U.S. 1041 (1994), and a decision was
entered in accordance with the opinion of the Court of Appeals
for the Seventh Circuit. Petitioner has filed a timely motion to
redetermine interest.

amount of its deficiencies.  In year 6, a net operating loss arose which was carried back to year 3.  The carryback of the year 6 loss displaced a year 3 foreign tax credit, which was then carried back to years 1 and 2, displacing the investment tax credit originally taken in those years.  R computed interest under sec. 6601, I.R.C., from the end of year 3 to the due date of the return for year 6 on deficiency amounts for years 1 and 2, calculated after the effect of the year 6 loss, without reducing the deficiencies by the amounts of ITC taken from year 3 to year 6.  P filed a timely motion under sec. 7481(c), I.R.C., to redetermine interest. Held, P has made overpayments of interest for years 1 and 2 because R should have taken the investment tax credit amounts into account in calculating interest accruing from the end of year 3 until the due date of the return for year 6 on deficiency amounts reduced by the investment tax credit carried back.

Roger J. Jones and Jeffrey B. Frishman, for petitioner.

Pamela V. Gibson and Richard G. Goldman, for respondent.


SUPPLEMENTAL OPINION

TANNENWALD, Judge:  A decision was entered in this case on November 17, 1994, pursuant to a stipulated computation, in accordance with the opinion of the Court of Appeals for the Seventh Circuit in Continental Illinois Corp. v. Commissioner, 998 F.2d 513 (7th Cir. 1993), cert. denied 510 U.S. 1041 (1994). On December 20, 1995, petitioner filed a timely motion under section 7481(c)[1] and Rule 261 to redetermine interest for the

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

1977 and 1978 tax years, alleging that respondent has erroneously calculated such interest. The issue for decision is whether respondent has failed to take into account the carryback of a 1979 investment tax credit (ITC), and consequently overcharged petitioner for interest which accrued before the effect of a 1982 net operating loss (NOL) carryback.

Background

In 1983, respondent determined deficiencies against petitioner's predecessor in interest for the tax years 1975 through 1979. Petitioner's predecessor challenged these deficiencies in this Court, which issued the following five opinions, under this same docket number, each captioned Continental Illinois Corp. v. Commissioner: T.C. Memo. 1988-318, T.C. Memo. 1989-468, T.C. Memo. 1989-636, 94 T.C. 165 (1990), and T.C. Memo. 1991-66. Decision was entered on May 13, 1992 (the 1992 decision), and was based on Rule 155 computations (the 1992 computations) which took into account certain amounts of an ITC carried back from 1979.

Portions of this Court's decision as reflected in T.C. Memo. 1988-318, T.C. Memo. 1989-636, and T.C. Memo. 1991-66 were appealed by the parties to the Court of Appeals for the Seventh Circuit. The Court of Appeals for the Seventh Circuit affirmed in part and reversed in part and remanded the case to this Court in Continental Illinois Corp. v. Commissioner, 998 F.2d 513,

issued on July 9, 1993. Following this remand, the parties filed with the Court on November 2, 1994, stipulated computations (the 1994 computations) covering the years 1976 to 1979. The 1994 computations did not include the amounts of the 1979 ITC that were included in the 1992 computations. This Court's decision, based on the 1994 computations, was entered on November 17, 1994, and became final within the meaning of section 7481(a)[2] on December 17, 1994 (the 1994 decision). As part of that decision, it was decided that there was an overpayment for the taxable year 1977 in the amount of $9,089,070.00, and a deficiency for the taxable year 1978 in the amount of $1,544,492.72. The decision document indicated that it "[incorporated] herein the facts recited in the respondent's computation as the findings of the Court".

Petitioner's tax liability for the taxable years at issue, with the effect and timing of various credit and net operating loss (NOL) carrybacks, reflecting the 1994 decision, is described in more detail as follows:

1977 Tax Year

Petitioner had a tax liability for the 1977 tax year of $24,200,118, before taking into account any credit carrybacks. Between April 15, 1977, and June 17, 1978, petitioner made

_____

[2] That section provides for a 30-day instead of a 90-day period for a decision of this Court to become final where there has been a remand by the Court of Appeals.

payments totaling $14,234,576 against this tax liability, producing a deficiency of $9,965,542.

In 1979, there arose a foreign tax credit (FTC) in the amount of $29,327,737 and an ITC in the amount of $17,238,117. In that year, petitioner applied $27,020,189 of the FTC, as well as some of the ITC, to its 1979 tax liability, and carried $2,307,548 of the FTC and $7,947,605 of the ITC back to 1977. For interest purposes, petitioner received the benefit of this carryback as of December 31, 1979. Sec. 6601(d).[3] Taking into account a refund petitioner received in the amount of $4,067,608 for 1977, petitioner had, as of January 1, 1980, a 1977 tax liability of $3,777,997.

In 1982, there arose an NOL, $59,552,102 of which was carried back to petitioner's 1979 tax year, pursuant to section 172(b),[4] eliminating petitioner's 1979 tax liability. The elimination of the 1979 tax liability had the effect of releasing the FTC and ITC which had arisen in 1979, to be used in other

---

[3] Sec. 346 of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324, amended sec. 6601(d), effective for interest accruing after October 3, 1982, to change the date on which a taxpayer receives the benefit of a carryback for interest purposes from the last day of the tax year in which the carryback arose to the due date for the return for that year.

[4] Sec. 172(b)(1) provides that an NOL for any taxable year shall be carried back to each of the 3 taxable years preceding the loss year. Sec. 172(b)(2) provides that the entire amount of the NOL shall be carried back first to the earliest year possible.

years.  Petitioner carried back $27,356,042 of the FTC to 1977, which, along with other credits from 1980 (work incentive credits and new jobs credits) in the amount of $342,819, satisfied its tax liability for 1977.  Because of ITC limitation rules found in section 46(a)(3) and (4),[5] the 1979 ITC originally carried back to 1977 could no longer be used (since there was now, as of 1982, after application of the FTC, no tax liability for 1977 against which it could be applied), and was thus displaced and subsequently carried over to 1981, a year not at issue.  As a result of the NOL's causing the release and carryback of the 1979 FTC to 1977 (and the consequent release of the ITC), there was as of March 15, 1983 (the due date for the 1982 return)[6] an overpayment of $9,089,070 for petitioner's 1977 tax year.[7]

---

[5]  For 1977, sec. 46(a)(3) and (4) limits available ITC to $25,000 plus 50 percent of tax remaining after the application of the FTC allowable for that year.  The $25,000 limit was taken up with ITC that arose and was used in 1977, and that is otherwise not at issue.  Also under sec. 38(c), effective for carrybacks from tax years after Dec. 31, 1983, amounts of FTC must be applied before any amounts of ITC.

[6]  See supra note 3.

[7]  The ITC at this point no longer affected petitioner's substantive tax liability for 1977.

1978 Tax Year

Petitioner had a tax liability of $6,608,807 for the 1978 tax year,[8] not reflecting the effect of any carrybacks from subsequent years. Between April 17, 1978, and October 12, 1979, petitioner made payments totaling $3,633,741 against this liability, leaving a deficiency of $2,975,066.

In 1979, there arose an FTC and an ITC, as discussed above. None of the 1979 FTC was carried back to 1978, and $444,727 of the 1979 ITC was carried back. Thus, as of January 1, 1980, petitioner had a 1978 tax liability of $2,530,339.

In 1982, there arose, as discussed above, an NOL which was carried back to 1979, eliminating tax liability for 1979 and releasing the FTC and ITC which had arisen in that year. Of the released 1979 FTC, $1,971,695 was carried back to 1978. Because of the effect of the carryback of this FTC, petitioner was precluded by section 46 from using the ITC carried back from 1979, which was then carried forward to 1981, a year not at issue. When adjusted for additional payments and credits of $79,925, petitioner had a tax liability for 1978, as of March 15, 1983, of $1,464,568.

The deficiencies and interest amounts involved were assessed for both years by respondent and fully paid by petitioner. In

---

[8] This liability reflects an ITC that arose in 1978 and was used in 1978.

early 1995, shortly after the 1994 decision became final, petitioner contacted respondent regarding the issue of the inclusion of the 1979 amounts of ITC.  Discussions between petitioner and respondent continued throughout 1995, after which petitioner timely filed a motion under Rule 261 to redetermine the interest flowing from the stipulated 1994 computations with respect to the 1977 and 1978 tax years.

## Discussion

For the 1977 tax year, respondent has computed interest on a deficiency of $11,733,776[9] from December 31, 1977, to March 14, 1983.  For the 1978 tax year, respondent has computed interest on a deficiency of $2,975,066 from December 31, 1977, to March 14, 1983.  Respondent has not given effect to amounts of 1979 ITC which were carried back during the period 1980 through 1983 because these amounts of ITC were ultimately displaced and not used for the years at issue.

Petitioner claims that respondent has overcharged it for interest by not taking into account the amounts of the 1979 ITC, with the effect of charging petitioner interest on higher deficiency amounts.  Petitioner's position is that respondent must, in plain terms, "give it credit" for the 1979 ITC which

---

[9]  There is an unexplained difference of $8,174 in this figure.  It is elsewhere listed as $11,725,602.  We use the figure from the stipulated 1994 computations.

reduced its 1977 deficiency to $3,777,997 during the period January 1, 1980, to March 14, 1983, and reduced its 1978 deficiency to $2,530,339 during the same period, and charge it interest on those lesser deficiency amounts during that period. Petitioner's claim is based on the notion that respondent had use of the money represented by the 1979 ITC "payment" during the "interim" period from January 1, 1980, to March 14, 1983, and cannot now charge petitioner for the use of that money.

Petitioner alleges that the amounts of ITC, which were included in the Rule 155 computations that were prepared in 1992 before a decision was rendered by the Court of Appeals for the Seventh Circuit, were erroneously left out of the 1994 computations.[10] Due to the effects of the subsequent carryback of the NOL from 1982, the inclusion or exclusion of the amounts of 1979 ITC does not alter the underlying net tax liability for either taxable year. Petitioner does not contest in any way its tax liability for the deficiencies as reflected in the 1994 decision.

Section 7481(c) provides:

Jurisdiction Over Interest Determinations.--
Notwithstanding subsection (a), if --
        (1) an assessment has been made by the
    Secretary under section 6215 which includes
    interest as imposed by this title,

---

[10]  See appendix and discussion _infra_ page 16.

> (2) the taxpayer has paid the entire amount of the deficiency plus interest claimed by the Secretary, and
>
> (3) within 1 year after the date the decision of the Tax Court becomes final under subsection (a), the taxpayer files a petition in the Tax Court for a determination that the amount of interest claimed by the Secretary exceeds the amount of interest imposed by this title,
>
> then the Tax Court may reopen the case solely to determine whether the taxpayer has made an overpayment of such interest and the amount of any such overpayment.  * * *

See also Rule 261, which implements sec. 7481(c); Note to Rule 261, 93 T.C. 1040-1041; Stauffacher v. Commissioner, 97 T.C. 453, 455-456 (1991).  There is no dispute that, as to both tax years, the three requirements of section 7481(c) have been met.

First, the entire amount of the deficiency plus interest has been paid.  Sec. 7481(c)(2); Melin v. Commissioner, 54 F.3d 432 (7th Cir. 1995), affg. an order of this Court.

Second, a timely petition was filed.  Sec. 7481(c)(3).

Third, a deficiency which includes interest has been assessed in respect of each year.  Sec. 7481(c)(1); Asciutto v. Commissioner, T.C. Memo. 1992-564, affd. 26 F.3d 108 (9th Cir. 1994).  In this connection, even though an overpayment was ultimately found for 1977, there was a deficiency for the period during which interest accrued, which is the subject of this dispute.  In addition, where we have jurisdiction to determine an overpayment (as we did in the original deficiency proceeding in this case), we also have jurisdiction over the interest on that overpayment.  Estate of Baumgardner v. Commissioner, 85 T.C. 445

(1985).  Under these circumstances, the interest issue before us in respect of 1977 is within our jurisdiction.[11]

There is also some question as to the exact nature of the relief petitioner is requesting for 1978.  The statute only grants this Court jurisdiction to determine an <u>over</u>payment of interest on a deficiency.  Petitioner alleges that respondent has, on the whole, <u>under</u>assessed interest on the 1978 deficiency.  However, petitioner also contends that, as part of the interest calculation which resulted in an underassessment with respect to the 1978 tax year, respondent has <u>over</u>charged interest on the 1978 deficiency during the period between its initial use of the carryback of the 1979 ITC and the occurrence of the superseding 1982 NOL.  Under these circumstances, we are satisfied that we have jurisdiction to determine whether there has been an overpayment of interest during the specific "interim" period.[12]

The three requirements of section 7481(c) having been satisfied, we turn our attention to the basic question involved herein, i.e., the extent to which the ITC for 1979, which was omitted from the 1994 computation, should be taken into account

---

[11]  We note that respondent does not contest our jurisdiction as to 1977.

[12]  In reaching this conclusion, we note respondent's indication on brief that respondent will make any computational adjustments that are a consequence of our decision, whether they result in interest due to petitioner or respondent.

as a payment for purpose of determining interest due. The parties have locked horns on four elements upon which the resolution of this question depends:

(1) Respondent contends that the 1994 decision has become final and that petitioner's motion seeks to modify that decision contrary to the established principle that this Court does not have jurisdiction to take such action in the absence of a showing of fraud on the Court, or lack of jurisdiction, in respect of the 1994 decision, which elements are concededly not present herein. Petitioner asserts that, since it seeks no change in the amounts of the deficiencies for 1977 and 1978 set forth in the 1994 decision, it is not seeking to modify a final decision, but only the underlying figures set forth in the 1994 computations for the limited purpose of determining interest due.

(2) Respondent also argues that the relief petitioner is requesting involves a change in the numbers set forth in the 1994 computations, including specific line entries and that such changes would require the Court to re-open the record to admit new facts, a procedure that constitutes a prohibited attempt to introduce a new matter in a Rule 155 proceeding.

(3) Respondent contends that, even if we find that we have jurisdiction, petitioner is bound by the 1994

computations which it signed and that any modification of those computations is accordingly unwarranted. In so doing, respondent denies that there was a mutual mistake by the parties based upon the omission from the 1994 computations of the 1979 ITC which had been included in the 1992 computations. Petitioner asserts that this omission constituted a mutual mistake and that therefore it should not be bound by those computations.

(4) Respondent asserts that, in any event, the 1994 computations reflected the correct ordering of the carrybacks by petitioner and that petitioner's use of the ITC to reflect payment is not justified, as a matter of law, because the ITC amounts were made unavailable by the 1982 NOL and the 1979 FTC. Petitioner counters that the fact that the later events prevented the application of the ITC against its tax liability for deficiencies does not preclude its ability, for the purpose of computing interest due, to continue to treat them as payment for the periods when they were used, i.e., between the effective dates of the credits involved and the dates of occurrence of the later events. We deal with each of these elements in turn.

Initially, we note that the existence of a final decision does not tie our hands in this case. We recognize that we may not modify a final decision absent a showing of fraud or lack of jurisdiction. Abatti v. Commissioner, 86 T.C. 1319, 1326 (1986),

affd. 859 F.2d 115 (9th Cir. 1988).  However, section 7481(c) specifically carves out an exception to the rule on the finality of our decisions.  Indeed, a prerequisite for invoking section 7481(c) is that the decision be final.  <u>Aldrich v. Commissioner</u>, T.C. Memo. 1993-290.  Thus, as long as we do not change the substance of the final decision, we are free to act under section 7481(c).

<u>Stauffacher v. Commissioner</u>, <u>supra</u>, cited by respondent, is clearly distinguishable.  In that case, the taxpayer sought a change in the amount of deficiencies, although the taxpayer was apparently requesting that this be done only for the purpose of computing interest.  Petitioner herein is not seeking a change in the amounts of the deficiencies for any purpose.  We do not think that the fact that the 1994 decision specifically incorporated the 1994 computations, see <u>supra</u> p. 4, requires a different conclusion.  Under the circumstances herein, such action does not elevate the computations from a position of providing a basis for the decision to the position of an integral part of the decision itself.

Respondent also seeks refuge in the rule that petitioner may not raise a new issue in a Rule 155 proceeding.  <u>Cloes v. Commissioner</u>, 79 T.C. 933 (1982).  But even if the issue of the proper application of the 1979 ITC as it affects interest liability were never raised before, it is not a "new issue" within the meaning of Rule 155.  Since in the instant case the

proper application of the 1979 ITC only affects interest, we had no jurisdiction to decide the issue during the main deficiency proceeding. Pen Coal Corp. v. Commissioner, 107 T.C. 249, 255 (1996). Thus, petitioner cannot be accused of raising a "new" issue that it could not have brought up before.

Moreover, this is not a Rule 155 proceeding, and respondent's argument on this point reveals a misunderstanding of the nature of the relief petitioner is requesting, and a misapprehension of the difference between Rules 155 and 261. The purpose of a computation under Rule 155 is to show "the correct amount of the deficiency, liability, or overpayment to be entered as the decision." Rule 155(a). If there is disagreement between the parties, the Court will determine the correct computation, and argument on that point is "confined strictly to consideration of the correct computation of the deficiency, liability, or overpayment resulting from the findings and conclusions made by the Court". Rule 155(c). Not only does Rule 155 not contemplate that a computation thereunder should reflect interest amounts, but, contrary to respondent's arguments on brief, the Rule does not allow arguments as to any other issues beyond the issues litigated in respect of the ultimate bottom-line deficiency, liability, or overpayment for the years at issue.

Rule 261(d), on the other hand, specifically contemplates "bona fide factual dispute[s]" which would have to be addressed by an evidentiary hearing. This Rule implies that this Court

will, if necessary, accept new facts, specifically in the context of a final decision, for the purpose of redetermining interest. Additionally, respondent has never contested the existence of the amounts of ITC, nor has respondent disputed the accuracy of the amounts set forth in petitioner's motion. The record herein contains all the evidence needed to decide the ultimate issue before us. Thus, respondent's assertion of the need for new facts is unfounded.

As we view the situation in respect of the procedural elements involved herein, petitioner is simply seeking to flesh out the 1994 computations so as to provide the foundation for a proper calculation of its liability for interest without in any way changing its liabilities for the deficiencies. Although petitioner's efforts reflect changes in some of the numbers in the 1994 computations, those changes do no more than offset each other. This is clearly reflected in the appendix to this opinion which shows that in each year petitioner first adds in the 1979 ITC credits and then subtracts an identical amount. In view of the foregoing, we are satisfied that neither the rule as to the finality of our decisions nor the principle that a new issue may not be raised in a Rule 155 proceeding precludes us from addressing the substance of petitioner's motion.

Respondent also objects to any change in the 1994 computations, on the grounds that the computations were based on a stipulation of settlement between petitioner and respondent,

and petitioner cannot now seek to be relieved of its stipulation. According to respondent, petitioner cut a deal and is now stuck with it. According to petitioner, the amounts of ITC in discussion were included in the 1992 computations but, as a result of mutual inadvertence, then left out of the 1994 computations.[13]

It is clear that we may reopen an otherwise valid settlement agreement based on the existence of mutual mistake. Callen v. Pennsylvania R. Co., 332 U.S. 625, 630 (1948); Dorchester Indus. Inc. v. Commissioner, 108 T.C. 320, 334 (1997). We may also relieve a party of a stipulation where justice requires. Cf. Rule 91(e); Adams v. Commissioner, 85 T.C. 359, 375 (1985); Shaw v. Commissioner, T.C. Memo. 1991-372 n.3. On the other hand, unilateral mistake is generally not a ground for reforming a settlement or stipulation. Stamm Intl. Corp. v. Commissioner, 90 T.C. 315, 320 (1988); see Markin v. Commissioner, T.C. Memo. 1989-665. It is also clear that the mere fact that a decision which has become final is based on a stipulation does not bar the application of section 7481(c). In Stauffacher v. Commissioner, 97 T.C. 453 (1991), the underlying issues had been resolved on the basis of a stipulated decision. While the Court rejected the

---

[13] We note that the Court of Appeals for the Seventh Circuit did not address any issue or otherwise take any action in respect of the application of carrybacks in the 1992 computations.

taxpayer's attempt to construct a different settlement, it did redetermine the amount of interest owed, as recalculated by respondent, which was lower than the amount which had been assessed and paid.

We must, therefore, determine whether the omission of the amounts of 1979 ITC from the 1994 computations was a result of unilateral or mutual mistake.  In respondent's initial notice of objection to petitioner's motion, respondent conceded that the ITC amounts were inadvertently left out of the 1994 computations:

> Respondent agrees that, on the basis of information now available, respondent would have agreed to the computations petitioner now advocates, had the matter been raised in 1994 when the computation on remand was being prepared.

In a supplemental notice of objection to petitioner's motion, and on brief, respondent recants this concession, because, "upon further consideration", respondent contends that the 1994 computations "correctly reflect the application of payments and credits to the deficiencies determined therein."  Thus, respondent does not deny that a mistake was originally made, but rather contends that the mistake led to what respondent now believes is the correct result, and therefore is not a mistake on respondent's part.  As a consequence, respondent seeks to enforce the 1994 computations as submitted on the ground that only a unilateral mistake was involved.

Stipulations are treated under general principles of contract law.  Stamos v. Commissioner, 87 T.C. 1451, 1455 (1986).

If a contract is based on a mutual mistake, a defense to reformation or rescission is not that the contract with the mistake is more beneficial to the defending party.  Similarly, it is no defense to petitioner's motion for respondent to decide that the outcome of the case with the stipulation based on a mutual mistake is more favorable to respondent than the outcome petitioner proposes.

Respondent cannot claim prejudice by petitioner's proposed treatment of the interim interest, respondent having included the ITC amounts in question in the 1992 computations, Dorchester Indus. Inc. v. Commissioner, supra, and petitioner having raised the issue with respondent shortly after discovering the error. See 13 Williston, Contracts, sec. 1578, at 507 n.5 (3d ed. 1970).

Finally, as we discuss below, while it is uncontested that the 1994 computations correctly reflect payments so as to determine tax liability for the deficiencies, they do not correctly reflect payments so as to determine the proper interest liability.  According to respondent, if a change of heart takes place, that is enough to eliminate the existence of a mutual mistake even though in point of fact the change of heart proves to be incorrect.  Respondent is in effect saying that, even if petitioner's contention as to the substantive law is correct, respondent's changed position remains unassailable.  We think respondent's position creates a catch-22 situation and is incongruous to say the least.

We conclude that, in the interest of justice, petitioner should be relieved from the effects of the stipulated 1994 computations for the narrow purpose of redetermining interest for the 1978 and 1977 tax years during the interim period at issue. Cf. Rule 91(e); Louisiana Land and Exploration Co. v. Commissioner, 90 T.C. 630, 648 (1988); Korangy v. Commissioner, 893 F.2d 69, 72 (4th Cir. 1990), affg. T.C. Memo. 1989-2 (applying Rule 91(e) to a settlement agreement).

In this context, we find it irrelevant whether the error as to the carryback of the 1979 ITC was due to the carelessness of either party, in this case, the failure of petitioner to protect its interest by pointing out to respondent at the time the 1994 computations were constructed that the amounts of the 1979 ITC had been omitted. As we stated in Woods v. Commissioner, 92 T.C. 776, 789 (1989):

> The circumstances of this case do not warrant withholding relief from a mistake. The mere fact that the party seeking relief did not exercise reasonable care does not preclude reformation. 1 Restatement, Contracts 2d, sec. 155, comment a; sec. 157, p. 416.
>
> Reformation provides a result that both parties agreed to and prevents an unintended and unexpected windfall. * * *

We now turn to the proper computation of interest, for purposes of determining whether or not petitioner has actually

made an overpayment under section 6601(d), which deals with the correct timing and application of loss and credit carrybacks.[14]

The parties agree that through the interplay of sections 46(a) and 172(b), the 1979 ITC was displaced as of March 15, 1983, for purposes of determining petitioner's ultimate tax liability. Respondent, however, contends that this displacement also means that the ITC may not be taken into account in

---

[14]  Sec. 6601(d) provides:
Income Tax Reduced by Carryback or Adjustment for Certain Unused Deductions.--
     (1)  Net operating loss or capital loss carryback.--If the amount of any tax imposed by subtitle A is reduced by reason of a carryback of a net operating loss, or net capital loss such reduction in tax shall not affect the computation of interest under this section for the period ending with the filing date for the taxable year in which the net operating loss or net capital loss arises.
     (2)  Certain credit carrybacks.--
         (A) In general.--If any credit allowed for any taxable year is increased by reason of a credit carryback, such increase shall not affect the computation of interest under this section for the period ending with the filing date for the taxable year in which the credit carryback arises, or, with respect to any portion of a credit carryback from a taxable year attributable to a net operating loss carryback, capital loss carryback, or other credit carryback from a subsequent taxable year, such increase shall not affect the computation of interest under this section for the period ending with the filing date for such subsequent taxable year.
         (B) Credit carryback defined.--For purposes of this paragraph, the term "credit carryback" has the meaning given such term by section 6511(d)(4)(C) [referring to the carryback of business credits, including the ITC, under section 39].

determining interest liability during the period January 1, 1980, to March 14, 1983.  We disagree.

In Manning v. Seeley Tube & Box Co., 338 U.S. 561 (1950), the Supreme Court held that the carryback of an NOL to abate a deficiency does not abate the interest accrued on that deficiency up until the date the NOL arises.  Absent a clear legislative expression to the contrary, the "use of money" principle will apply to the accrual of interest on a deficiency.  Id. at 566.

The "use of money" principle is reflected in section 6601.  Section 6601(a) provides for interest to be charged on a deficiency.  Section 6601(d) provides that interest is not affected by a carryback before the filing date of the year in which the loss or credit arises.[15]  That is, the party who has the use of the money pays interest up until the event which causes the party no longer to have use of that money.  In general, interest liability is determined under section 6601 synchronically, looking at the period during which interest accrues, without reference to future events, such as loss or credit carrybacks.  This general principle, evident from the statute itself, is also clearly set forth in respondent's own rulings.

---

[15]  Sec. 6601(d) mentions specifically net capital losses, NOL's and ITC's, but is silent as to FTC's.  See infra note 18.

For example, in Rev. Rul. 66-317, 1966-2 C.B. 510, the taxpayer claimed an ITC in year 1. In year 4, an NOL arose which was carried back to year 1, eliminating taxable income and tax liability for year 1, and thereby displacing the ITC originally claimed. The ruling holds that the taxpayer was not required to pay interest from year 1 to year 4 on that portion of the tax that had been originally offset by the ITC that was displaced by the NOL.

In Rev. Rul. 71-534, 1971-2 C.B. 414, the taxpayer incurred an NOL for year 6, which was carried back to year 3, eliminating taxable income against which an FTC had been claimed in year 3. As a result, the FTC was carried back to year 1, for which year a refund was claimed. The ruling holds that interest was due to the taxpayer on the refund from the first day after the close of year 6, because the significant event that gave rise to the year 1 overpayment was the year 6 NOL.[16]

In Rev. Rul. 82-172, 1982-2 C.B. 397, the taxpayer had an unused ITC in year 3 that it carried back to year 1. In year 4, the taxpayer incurred an NOL which it carried back to year 1, eliminating all income and resultant tax liability against which the ITC could be applied, and resulting in a refund for year 1. The displaced ITC was carried to year 2, resulting in an overpayment of tax for year 2. The ruling holds that the

---

[16] See _infra_ note 18.

significant event that gave rise to the year 1 refund and the year 2 overpayment was the year 4 NOL and that the taxpayer was entitled to interest on both amounts only after the last day of year 4. Consistent with Rev. Rul. 66-317, supra, the ruling also holds that the taxpayer did not have to pay interest on the amount of its tax liability originally satisfied by the ITC from year 3 to year 4, but then replaced by the NOL. The ruling specifically notes that "the obligation to pay * * * must be considered sequentially." Rev. Rul. 82-172, 1982-2 C.B. 397, 398.

According to respondent, the use-of-money principle illustrated in the revenue rulings only applies where there is a fixed liability. In this case, respondent's position is that, because of the course of the litigation, the final liability for 1977 and 1978 did not become fixed until after the 1982 NOL arose, which, by way of carryback, eliminated the use of any amounts of ITC to reduce that liability, or reduce interim interest charged. Respondent's analysis is fundamentally flawed.

While it is true that petitioner's final liability was fixed by the 1994 decision of this Court, that decision, like all Tax Court decisions, relates back to the time the liability arose. That is, the effect of a decision of this Court is that a deficiency or overpayment is found to exist in the amount determined by this Court for all purposes, including interest. There is no question that the ITC in question qualified as a

payment of the tax as initially shown on the returns. Certainly, the ITC is a payment of the tax as ultimately determined by this Court. The fact that the ultimate decision by this Court as to petitioner's tax liability was delayed by the litigation process is irrelevant.

It is clear that these rulings reinforce petitioner's position and the application herein of the general rule of Manning v. Seeley Tube & Box Co., supra, and section 6601, that "the underlying objective is to determine in a given situation whose money it is and how long the other party had use of it." Rev. Rul. 82-172, 1982-2 C.B. 397. If respondent had use of petitioner's money, even in the form of a credit, during the relevant period, then respondent must take account of that money in computing interest on any deficiency. See also Rev. Rul. 85-65, 1985-1 C.B. 366; Tech. Adv. Mem. 83-26-001 (Feb. 25, 1983); Tech. Adv. Mem. 86-24-002 (Dec. 5, 1985); Tech. Adv. Mem. 94-43-007 (May 19, 1994).[17]

There are two exceptions to this general rule. See G.C.M. 39,359 (May 14, 1985). The first exception occurs in the case where there is "clear legislative expression" indicating that the

---

[17] "[A]lthough the petitioners are not entitled to rely upon unpublished private rulings which were not issued specifically to them, such rulings do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws." Hanover Bank v. Commissioner, 369 U.S. 672, 686 (1962) (fn. refs. omitted).

underlying principle of section 6601(d) should not apply.
Manning v. Seeley Tube & Box Co., 338 U.S. at 566.  Neither party
contends that such an exception applies to the facts of this
case.[18]

The second exception occurs when the later event relates
back to the beginning of the interest period, in which case
interest is calculated from the beginning taking the change into
account.  This exception can be illustrated by General Dynamics
Corp. v. United States, 214 Ct. Cl. 369, 562 F.2d 1201 (1977),
which respondent cites in support of the argument that interest
on petitioner's deficiency not be reduced by the amounts of ITC
used between 1979 and 1983.  In that case, the taxpayer

_____

[18]  But see Fluor Corp. v. United States, 35 Fed. Cl. 520
(1996), which holds that sec. 6601(d) does not apply to FTC's and
abated interest on a deficiency eliminated by the carryback of an
FTC.  FTC carryovers "shall be deemed taxes paid or accrued" in
the years to which they are carried back or forward.  Sec.
904(c).  Sec. 6611(g) provides that, notwithstanding the
provisions of sec. 904(c), interest on an overpayment
attributable to an FTC accrues, not from the date "deemed" paid,
but from the date the taxes were actually paid.  Significantly,
however, sec. 6601(d) with regard to underpayments lacks any
analogous provision as to the treatment of FTC's.  The court in
Fluor interpreted this silence as the "clear legislative
expression" required by Manning v. Seeley Tube & Box Co., 338
U.S. 561, 566 (1950), to suspend the otherwise general "use of
money" principle, and not charge the taxpayer interest on the
deficiency eliminated by the carryback of the FTC.  While we
recognize that there is a lack of statutory clarity in the
interplay between secs. 904, 6601, and 6611, we are not
confronted herein with comparable lack of clarity which would
cause us to characterize such lack of clarity as a "clear
legislative expression" for purposes of Manning v. Seeley Tube &
Box Co., supra.

originally took FTC's in 1958 and 1959. In 1961, an NOL arose, which was carried back and displaced the FTC's from 1958 and 1959. The taxpayer then decided to deduct the foreign taxes (instead of taking them in the form of a credit) in 1958 and 1959. The court held that the taxpayer owed interest as if FTC's had not been invoked in the first place, but rather as if the taxes had been deducted initially, because the later decision to change from a credit to a deduction related back to the time the credits or deductions arose, at the beginning of the interest period.

General Dynamics Corp. v. United States, supra, is clearly distinguishable. In the instant case, petitioner has not attempted to deduct items previously reflected in a credit, or to change the nature of a previously claimed credit, nor has it claimed any new deductions against its 1977 or 1978 income. Here, a credit was replaced not with a deduction, but with another credit. In Rev. Rul. 66-317, 1966-2 C.B. 510, the replacement of a credit with a loss did not produce an interim interest liability. We are unable to see how petitioner's replacement of a credit with a credit (ITC for FTC) could produce such a liability herein.

It is clear that the general use-of-money principle enunciated in Manning v. Seeley Tube & Box Co., supra, reflected in section 6601(d), and illustrated in respondent's rulings, applies to the facts of this case. For the application of that

principle for the period in dispute, the later event is the NOL

which arose in 1982, and which was carried back to 1979 which

displaced more 1979 credits back to 1977.  Section 6601(d)(1)

provides specifically:

> If the amount of any tax * * * is reduced by reason of
> a carryback of a net operating loss * * * such
> reduction in tax shall not affect the computation of
> interest under this section for the period ending with
> the filing date for the taxable year in which the net
> operating loss * * * arises.

Thus, applying the statute, the interest computation is not

changed by the 1982 NOL before March 15, 1983.  Before that date,

interest is computed on the deficiencies as they existed on

January 1, 1980, reflecting the ITC carried back from 1979, as if

the NOL had not occurred.

Interest should then properly be charged based on the

deficiency determined sequentially by succeeding events.  That

is, as to the 1977 tax year, for the period January 1, 1980, to

March 14, 1983, interest is to be computed based on the

deficiency amount of $3,777,997, which reflects the carryback

from 1979 of an ITC in the amount of $7,947,605 and an FTC in the

amount of $2,307,548.  As to the 1978 tax year, for the period

January 1, 1980, to March 14, 1983, interest is to be computed

based on the deficiency amount of $2,530,339, which reflects the

carryback from 1979 of an ITC in the amount of $444,727.

It should be pointed out that, under this analysis, there is

no danger of petitioner's receiving a double benefit for the 1979

ITC.  In the end, after taking into account the effects of the 1982 NOL, petitioner's ultimate tax liability was reduced by the 1979 ITC only once, namely, in 1981.  In addition, the 1979 ITC reduced petitioner's liability for interest on any deficiency from the point at which it was paid, first for the 1977 and 1978 tax years from January 1, 1980, to March 14, 1983, and then for the 1981 tax year from March 15, 1983, onward.  There is no overlap of periods to which the 1979 ITC was applied for purposes of interest or liability for deficiencies.

To reflect the foregoing,

An appropriate order will

be issued.

APPENDIX

TAX COURT DOCKET NO. 5931-83
MOTION TO REDETERMINE INTEREST ON DEFICIENCY
TAX LIABILITY
TAX YEAR 1977

| | Petitioner's Sec 7481(c) Interest Computation | Nov., 1994 Stipulation | Difference |
|---|---|---|---|
| Determination of Overassessment for Restricted Interest | | | |
| Tax liability without credit carrybacks | 24,200,118 | 24,200,118 | 0 |
| Tax assessed and paid | 14,234,576 | 14,234,576 | 0 |
| Deficiency without allowance for carrybacks | 9,965,542 | 9,965,542 | 0 |
| | | | |
| Tax liability after consideration of carryback from 1979 to 1977: | | | |
| Foreign tax credit carryback | 2,307,548 | 2,307,548 | 0 |
| Investment tax credit carryback | 7,947,605 | 0 | 7,947,605 |
| Total credit carryback from 1979 to 1977 | 10,255,153 | 2,307,548 | 7,947,605 |
| Unexplained difference included in stipulation | | 8,174 | (8,174) |
| Tax liability after consideration of carryback from 1979 to 1977 | 13,944,965 | 21,900,744 | (7,955,779) |
| Tax assessed and paid: | | | |
| Total payments | 14,234,576 | 14,234,576 | 0 |
| Tentative allowance from 1979 to 1977 | 4,067,608 | 4,067,608 | 0 |
| Net payments | 10,166,968 | 10,166,968 | 0 |
| Deficiency after consideration of credit carryback from 1979 to 1977 | 3,777,997 | 11,733,776 | (7,955,779) |
| | | | |
| Tax liability after consideration of carryback from 1982 to 1977: | | | |
| Current year investment tax credit (freed up) | (4,576,641) | (4,576,641) | 0 |
| Unexplained difference included in stipulation | | (8,174) | 8,174 |
| Foreign tax credit carryback | 25,048,494 | 25,048,494 | 0 |
| Investment tax credit carryback/(freed up) | (7,947,605) | 0 | (7,947,605) |
| Work incentive tax credit carryback | 15,550 | 15,550 | 0 |
| Jobs tax credit carryback | 327,269 | 327,269 | 0 |
| Total credit carryback from 1982 to 1977 | 17,443,708 | 25,391,313 | (7,947,605) |
| Tax liability after consideration of carryback from 1982 to 1977 | 1,077,898 | 1,077,898 | 0 |
| Net payments | 10,166,968 | 10,166,968 | 0 |
| Overpayment after consideration of credit carryback from 1982 to 1977 | (9,089,070) | (9,089,070) | 0 |
| | | | |
| Determination of Overassessment | | | |
| Tax liability | | | |
| Tax liability without credit carrybacks | 24,200,118 | 24,200,118 | 0 |
| Current year investment tax credit (freed up) | (4,576,641) | (4,576,641) | 0 |
| Foreign tax credit carryback | 27,356,042 | 27,356,042 | 0 |
| Investment tax credit carryback/(freed up) | 0 | 0 | 0 |
| Work incentive tax credit carryback | 15,550 | 15,550 | 0 |
| Jobs tax credit carryback | 327,269 | 327,269 | 0 |
| Total credit carryback | 27,698,861 | 27,698,861 | 0 |
| Tax liability after consideration of credit carryback from 1979 and 1982 | 1,077,898 | 1,077,898 | 0 |
| Tax assessed and paid | | | |
| Total payments | 14,234,576 | 14,234,576 | 0 |
| Tentative allowance from 1979 to 1977 | 4,067,608 | 4,067,608 | 0 |
| Net payments | 10,166,968 | 10,166,968 | 0 |
| Overpayment after consideration of credit carryback from 1979 and 1982, as reflected in the Tax Court Decision dated November 17, 1994 | (9,089,070) | (9,089,070) | 0 |

|  | Petitioner's Sec 7481(c) Interest Computation | Nov., 1994 Stipulation | Difference |
|---|---|---|---|
| **Determination of Deficiency to be Paid for Restricted Interest** |  |  |  |
| Tax liability without credit carrybacks | 6,608,807 | 6,608,807 | 0 |
| Tax assessed and paid | 3,633,741 | 3,633,741 | 0 |
| Deficiency without allowance for carrybacks | 2,975,066 | 2,975,066 | 0 |
|  |  |  |  |
| Tax liability after consideration of carryback from 1979 to 1978: |  |  |  |
| Investment tax credit carryback | 444,727 | 0 | 444,727 |
| Total credit carryback from 1979 to 1978 | 444,727 | 0 | 444,727 |
| Tax liability after consideration of carryback from 1979 to 1978 | 6,164,080 | 6,608,807 | (444,727) |
| Tax assessed and paid | 3,633,741 | 3,633,741 | 0 |
| Deficiency after consideration of credit carryback from 1979 to 1978 | 2,530,339 | 2,975,066 | (444,727) |
|  |  |  |  |
| Tax liability after consideration of carryback from 1982 to 1978: |  |  |  |
| Current year investment tax credit (freed up) | (541,122) | (541,122) | 0 |
| Foreign tax credit carryback | 1,971,695 | 1,971,695 | 0 |
| Investment tax credit carryback/(freed up) | (444,727) | 0 | (444,727) |
| Total credit carryback from 1982 to 1978 | 1,526,968 | 1,971,695 | (444,727) |
| Tax liability after consideration of carryback from 1982 to 1978 | 5,178,234 | 5,178,234 | 0 |
| Tax assessed and paid | 3,633,741 | 3,633,741 | 0 |
| Tax assessed 9/30/92 subsequent to Tax Court Decision | 2,076,812 | 2,076,812 | 0 |
| Total assessment | 5,710,553 | 5,710,553 | 0 |
| Overassessment after consideration of credit carryback from 1982 to 1978 | (532,319) | (532,319) | 0 |
| Tax assessed 9/30/92 subsequent to Tax Court Decision but not paid | 2,076,812 | 2,076,812 | 0 |
| Tax deficiency before taking into account 9/30/92 assessment, as reflected in the Tax Court Decision dated November 17, 1994 | 1,544,493 | 1,544,493 | 0 |
| Payments and credits applied after the Tax Court Decision | 79,925 | 79,925 | 0 |
| Deficiency after consideration of carryback from 1979 and 1982, and payments subsequent to the November 17, 1994 Tax Court Decision | 1,464,568 | 1,464,568 | 0 |
|  |  |  |  |
| **Determination of Deficiency** |  |  |  |
| Tax liability |  |  |  |
| Tax liability without credit carrybacks | 6,608,807 | 6,608,807 | 0 |
| Current year investment tax credit (freed up) | (541,122) | (541,122) | 0 |
| Foreign tax credit carryback | 1,971,695 | 1,971,695 | 0 |
| Investment tax credit carryback/(freed up) | 0 | 0 | 0 |
| Total credit carryback | 1,971,695 | 1,971,695 | 0 |
| Tax liability after consideration of credit carryback from 1979 and 1982 | 5,178,234 | 5,178,234 | 0 |
| Tax assessed and paid |  |  |  |
| Tax assessed and paid without consideration of events subsequent to Tax Court Decision | 3,633,741 | 3,633,741 | 0 |
| Tax deficiency before taking into account 9/30/92 assessment, as reflected in the Tax Court Decision dated November 17, 1994 | 1,544,493 | 1,544,493 | 0 |
| Payments and credits applied after the Tax Court Decision | 79,925 | 79,925 | 0 |
| Deficiency after consideration of carryback from 1979 and 1982, and payments subsequent to the November 17, 1994 Tax Court Decision | 1,464,568 | 1,464,568 | 0 |